IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HERITAGE CAPITAL CORPORATION, HERITAGE AUCTIONEERS & GALLERIES, INC., HERITAGE NUMISMATIC AUCTIONS, INC., HERITAGE AUCTIONS, INC., HERITAGE VINTAGE SPORTS AUCTIONS, INC., CURRENCY AUCTIONS OF AMERICA, INC., and HERITAGE COLLECTIBLES, INC., | § § § § § § § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | No. 3:16-cv-03404-D |
| CHRISTIE'S, INC. and COLLECTRIUM, INC., | § § § § | |
| Defendant. | § | |

**DEFENDANTS' MOTION TO DISMISS AND
<u>COMPEL ARBITRATION AND BRIEF IN SUPPORT</u>**

**TABLE OF CONTENTS**

I. BACKGROUND ..................................................................................................................1

II. ARGUMENT AND AUTHORITIES ..................................................................................2

    A.    *Federal Courts Are Required to Enforce Arbitration Agreements.* ..........................2

    B.    *Public Policy Favors Arbitration.* ............................................................................3

    C.    *Plaintiffs' Claims Must Be Arbitrated.* ...................................................................4

        1.    Plaintiffs Agreed to Arbitrate Any Dispute with Defendants. .............................4

        2.    Plaintiffs Are Estopped from Denying Validity and Enforceability of the Arbitration Agreement Against Any Defendant. ..................................................................5

        3.    Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement. ............................6

        4.    No Federal Statute or Policy Renders the Plaintiffs' Claims Non-Arbitrable. ....................7

III. CONCLUSION ..................................................................................................................8

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
  115 S. Ct. 834 (1995) ...................................................................................................................3

*American Heritage Life Ins. Co. v. Lang*,
  321 F.3d 533 (5th Cir. 2003) ........................................................................................................4

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) .....................................................................................................................3

*Fedmet Corp. v. M/V Buyalyk*,
  194 F.3d 674 (5th Cir. 1999) ........................................................................................................3

*In re FirstMerit Bank, N.A.*,
  52 S.W.3d 749 (Tex. 2001) ..........................................................................................................6

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ...................................................................................................................4, 8

*Grigson v. Creative Artists Agency*,
  210 F. 3d 524 (5th Cir. 2000) .......................................................................................................6

*Hadnot v. Bay, Ltd.*,
  344 F.3d 474 (5th Cir. 2003) ........................................................................................................4

*Meyer v. WMCO-GP, LLC*,
  211 S.W.3d 302 (Tex. 2006) ........................................................................................................6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 US 614 (1985) .......................................................................................................................8

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  103 S. Ct. 927 (1983) ...................................................................................................................4

*OMG, L.P. v. Heritage Auctions, Inc.*,
  612 F. App'x 207 (5th Cir. 2015) .................................................................................................5

*Pedcor Management Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.*,
  343 F.3d 355 (5th Cir. 2003) ........................................................................................................2

*Pegasus Int'l Inc. v. Champagne*,
  No. 6:11-1402, 2012 WL 5616095 (W.D. La. October 18, 2012) ...............................................8

*Positive Software Solutions, Inc. v. New Century Mortg. Corp.*,
  259 F. Supp. 2d 531 (N.D. Tex. 2003) .........................................................................................8

*Primerica Life Ins. Co. v. Brown*,
    304 F.3d 469 (5th Cir. 2002) ................................................................................................ 4

*Prudential Securities Inc. v. Marshall*,
    909 S.W.2d 896 (Tex. 1995) ................................................................................................. 4

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) .................................................................................................................. 2

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) .............................................................................................................. 4

*Will-Drill Res., Inc. v. Samson Res. Co.*,
    352 F.3d 211 (5th Cir. 2003) ............................................................................................ 4, 8

*Williams v. Cigna Fin. Advisors, Inc.*,
    56 F.3d 656 (5th Cir. 1995) .................................................................................................. 8

**Statutes**

9 U.S.C. § 1 ................................................................................................................................... 2

9 U.S.C. § 2 ................................................................................................................................... 3

9 U.S.C. § 3 ................................................................................................................................... 3

9 U.S.C. § 4 ................................................................................................................................... 2

9 U.S.C. §§ 9-12 ........................................................................................................................... 3

Tex. Civ. Prac. & Rem. Code § 171.002(a)(2) ............................................................................. 7

Defendants Christie's Inc. and Collectrium, Inc. respectfully move this Court to dismiss this action in favor of arbitration pursuant to the terms of an agreement Plaintiffs assert in this action. Plaintiffs' claims in this lawsuit are based upon alleged misconduct with respect to use of Plaintiffs' website that they claim is governed by a Website Use Agreement. The Website Use Agreement requires any claims between the parties, including, *inter alia*, from use of Plaintiffs' website, be brought exclusively in mandatory arbitration. The Court should compel arbitration on all claims and dismiss this case. In the alternative, the Court should compel arbitration on all claims within the scope of the arbitration provision and stay any remaining claims.

## I. BACKGROUND

Plaintiffs Heritage Capital Corporation; Heritage Auctioneers and Galleries, Inc.; Heritage Numismatic Auctioneers, Inc.; Heritage Auctions, Inc.; Heritage Vintage Sports Auctions, Inc.; Currency Auctions of America, Inc.; and Heritage Collectibles, Inc. ("Plaintiffs") allege eight causes of action in their Complaint: 1) copyright infringement, 2) violation of the Computer Fraud And Abuse Act, 2) violation of the Digital Millennium Copyright Act, 3) harmful access by computer, 4) trespass to chattels, 5) unfair competition, 6) civil conspiracy, and 7) breach of contract.[1] One or more of Plaintiffs asserts each of these causes of action against both Defendants, Christie's, Inc. and Collectrium, Inc. ("Defendants"). All of Plaintiffs' causes of action arise from one or more Defendants' alleged use and data mining of Plaintiffs' website.[2]

Plaintiffs allege that such activities are prohibited by a Website Use Agreement ("WUA") governing any use of Plaintiffs' website.[3] The WUA is expressly among website users and Heritage Auctions and its affiliated companies (collectively defined as "Heritage"), which encompasses all of

---

[1] *See* Complaint ¶¶ 60-119, ECF No. 1.
[2] *See id.* ¶ 12.
[3] *See* Complaint ¶¶ 19, 61, 69, 87, 96, & 117.

**MOTION TO DISMISS AND COMPEL ARBITRATION**   PAGE 1

the Plaintiffs.[4]  The WUA provides that <u>any dispute</u> related to use of Plaintiffs' website that is not brought by a consumer must be presented in confidential, binding arbitration:

> By Your use of the website you agree that <u>any claim, dispute, or controversy in connection with Heritage and its affiliates</u> shall:
> . . .
>
> b. for <u>any claimant other than a consumer</u>, the claim shall be presented in <u>confidential binding arbitration</u> before a single arbitrator . . . . <u>Claims, disputes, or controversies in connection with Heritage shall be the [sic] construed in the broadest possible terms and include</u>, but are not limited to, <u>any matter or transaction relating to</u> and /or arising out of any purchase, any offer to sell, any bid, <u>usage of Website</u>, or any amendment to this Agreement, any advances, any consigned properties, damage to any consigned, purchased or offered properties, any interpretation of this Agreement, any alleged verbal modification and/or any purported settlement whether asserted in contract, tort, under Federal or State statute or regulation or otherwise.[5]

Because Plaintiffs are not "consumers," and their claims all arise from usage of their website, they should have brought their claims in confidential binding arbitration.

## II. ARGUMENT AND AUTHORITIES

### A.   *Federal Courts Are Required to Enforce Arbitration Agreements.*

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA")[6] provides that "[a] party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement," and "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."[7]  Written agreements to arbitrate, like the one at issue here, "shall be valid, irrevocable, and enforceable."[8]

---

[4] App. 3.
[5] App. 4 (emphasis added).
[6] Despite the WUA's invocation of Texas law, the FAA applies because the FAA preempts any state law that would invalidate an arbitration agreement involving interstate commerce. *See Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984); *Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.*, 343 F.3d 355, 361 (5th Cir. 2003) ("As the FAA is part of Texas law, the parties' covenant that 'arbitration shall be governed by the laws of the State of Texas,' means that this choice-of-law provision includes both the FAA and applicable state law.").
[7] 9 U.S.C. § 4.
[8] 9 U.S.C. § 2.

<u>MOTION TO DISMISS AND COMPEL ARBITRATION</u>     PAGE 2

Once a court determines that the applicant has a contractual right to arbitration, it must direct the parties to arbitration and stay the civil litigation.[9]

The FAA also provides that when referring a claim to arbitration, a court" <u>shall on application of one of the parties stay the trial of the action</u> until such arbitration has been had in accordance with the terms of the agreement . . . ."[10]  And the Fifth Circuit has held that a district court may dismiss, rather than stay, an action where *all* claims are properly subject to arbitration:

> *Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.*  Any post-arbitration remedies sought by the parties will not entail renewed considerations and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.  *See* 9 U.S.C. §§ 9-12.[11]

All of the Plaintiffs' claims—and any other claims Plaintiffs could bring—are subject to binding arbitration.  Therefore, retaining jurisdiction during the arbitration would serve no purpose, and the Court should dismiss this case.[12]  In the event the Court determines that any claims in this case are not arbitrable, the Court should dismiss the arbitrable claims and stay those that remain.

    **B.**    *Public Policy Favors Arbitration.*

Congress enacted the FAA to overcome courts' reluctance to enforce arbitration agreements,[13] and the FAA does not merely place arbitration agreements on equal footing with other contracts, it evinces a strong federal policy in favor of arbitration.[14]  This policy is so liberal

---

[9] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[D]istrict courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

[10] 9 U.S.C. § 3 (emphasis added).

[11] *Alford*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis added); *see Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999) ("Although the express terms of § 3 provide that 'a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration . . .,' we have interpreted this language to mean only that the district court cannot deny a stay when one is properly requested." (quoting *Alford*, 975 F.2d at 1164)(citation omitted)).

[12] *See Alford*, 975 F.2d at 1164 ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

[13] *See Allied-Bruce Terminix Cos. v. Dobson*, 115 S. Ct. 834, 838 (1995).

[14] *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (noting that the FAA manifests a liberal federal policy favoring arbitration agreement).

that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."[15] Indeed, both federal and state courts in Texas find that "[t]he policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration '*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue.'"[16]

### C. *Plaintiffs' Claims Must Be Arbitrated.*

When adjudicating a motion to compel arbitration, courts engage in a two-step inquiry.[17] "First, the court must determine whether the parties agreed to arbitrate the dispute."[18] If so, the court "must consider whether any federal statute or policy renders the claims non-arbitrable."[19] When analyzing the first question, whether the parties agreed to arbitrate the dispute, two factors are considered: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question is covered by the valid agreement.[20] In determining whether an agreement to arbitrate exists, courts apply "ordinary [state-law] contract principles."[21]

#### 1. Plaintiffs Agreed to Arbitrate Any Dispute with Defendants.

The arbitration agreement is contained in Plaintiffs' WUA, and Plaintiffs' allege that "[a]ll registered users of HA.com must agree to the terms of a Website Use Agreement in order to register."[22] Plaintiffs repeatedly allege that Defendants or their agents registered accounts on HA.com and agreed to be bound by the WUA:

---

[15] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 103 S. Ct. 927, 941 (1983); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).
[16] *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960); *see also Prudential Securities Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)).
[17] *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 (5th Cir. 2003).
[18] *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).
[19] *Id.* (quoting *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)).
[20] *Id.*; *see also Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003).
[21] *Will-Drill Res.*, 352 F.3d at 214.
[22] Complaint ¶ 19.

**MOTION TO DISMISS AND COMPEL ARBITRATION     PAGE 4**

> "Defendants have specifically accessed and targeted Heritage's website, owned and maintained by Heritage in Dallas, Texas, and have agreed to the terms and conditions of the Heritage website . . . ."[23]

> "The Website Use Agreement is a valid and enforceable agreement binding on Defendants. . . ."[24]

> "Upon use of the HA.com website, Defendants agreed to be bound by the Website Use Agreement."[25]

While Defendants do not concede that the WUA—*in toto* or any particular provision—constitutes a valid and enforceable agreement among them and all Plaintiffs, it is not necessary for them to do so. In fact, that can be a question reserved for the arbitrator.[26] Because Defendants are moving to compel arbitration, and Plaintiffs are alleging Defendants are bound by the WUA, there can be no doubt that the arbitrator may decide whether any other portion of the WUA is binding even if Defendants deny a valid contract.[27] And considering the nature of their claims, it would be absurd for Plaintiffs to argue there is no valid agreement to arbitrate.[28]

Because the arbitration agreement is in Plaintiffs' WUA, there is no question they were aware of, and agreed to be bound by, the arbitration agreement.

        2. <u>Plaintiffs Are Estopped from Denying Validity and Enforceability of the Arbitration Agreement Against Any Defendant.</u>

Plaintiffs cannot deny arbitration even if not all Defendants are bound by the WUA. Under the principle of equitable estoppel, "a litigant who sues based on a contract subjects him or herself

---

[23] Complaint ¶ 9.
[24] Complaint ¶ 113.
[25] Complaint ¶ 116.
[26] *See OMG, L.P. v. Heritage Auctions, Inc.*, 612 F. App'x 207, 210-11 (5th Cir. 2015) (*per curiam*) (holding issue of contract formation was properly arbitrated where claimant asserted no meeting of the minds), *cert. denied*, 136 S. Ct. 503.
[27] *See OMG*, 612 F. App'x at 212 (party consented to have arbitrator decide contract formation when, *inter alia*, lack of formation was included in initial arbitration demand).
[28] *C.f. OMG*, 612 F. App'x at 212 n.3 ("We need not and do not decide whether a court would need to decide meeting of the minds, rather than allowing an arbitrator to do so, when faced with a contested motion to compel arbitration based on a potentially nonexistent contract. . . . This case rests on a simpler question: whether OMG and Heritage, by their conduct, consented to the arbitrator determining the meeting of the minds issue by submitting it to the arbitrator and failing to object that he lacked authority to decide this issue." (citations omitted)).

**MOTION TO DISMISS AND COMPEL ARBITRATION**    **PAGE 5**

to the contract's terms" including an arbitration provision.[29] A plaintiff cannot "'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory."[30]

The Fifth Circuit has held that equitable estoppel generally applies in two different situations:

> *First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.* When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. *Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract*.[31]

Both situations exist here. First, Plaintiffs allege that by using their website, one or more Defendants agreed to be bound by the WUA.[32] Second, Plaintiffs allege that both Defendants "knowingly agreed and conspired with each other to engage in the alleged wrongful conduct . . . ."[33]

### 3. Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement.

The WUA's dispute-resolution provision applies to "any claim, dispute, or controversy in connection with Heritage and its affiliates . . . ."[34] Just in case that language was not broad enough on its own, the WUA elaborates that it should be given the "broadest possible" construction in order to encompass all conceivable disputes:

> ["]Claims, disputes, or controversies in connection with Heritage["] shall be the [sic] construed in the broadest possible terms and include . . . any matter or

---

[29] *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755-56 (Tex. 2001); *see Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006) (listing cases so holding).
[30] *Grigson v. Creative Artists Agency*, 210 F. 3d 524, 528 (5th Cir. 2000).
[31] *Grigson*, 210 F.3d at 527 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).
[32] Complaint ¶¶ 9, 116.
[33] Complaint ¶ 109.
[34] App. 4.

>transaction relating to and/or arising out of . . . <u>usage of Website</u>, . . . [and/or] any <u>interpretation of this Agreement</u> . . . whether asserted in <u>contract, tort, under Federal or State statute or regulation</u>[,] or otherwise.[35]

Thus any and every dispute among Heritage and its affiliates (i.e., Plaintiffs) on the one hand, and any other party to the WUA (allegedly all users of HA.com) on the other hand, is subject to the WUA's dispute-resolution provision.

Furthermore, every claim in this action is indubitably a "claim, dispute, or controversy in connection with Heritage and its affiliates," that arises out of either the interpretation of the WUA or Defendants' alleged use of Heritage's website, which Plaintiffs allege is governed by the WUA.

Finally, that the WUA specifies that "for any claimant <u>other than a consumer</u>, the claim shall be presented in confidential binding arbitration before a single arbitrator . . . ."[36] The WUA does not define "consumer," but the context and the fact that it appears only in the dispute-resolution provision suggests that it refers to the so called "consumer exception" in the Texas Arbitration Act.[37] And the consumer exception only applies to transactions with an individual, not transactions between corporations.[38] Because Plaintiffs are not individuals, this is an action brought by "claimant[s] other than a consumer," to which the arbitration requirement applies. Even if the Texas Arbitration Act did not apply, it is clear from the context of the WUA that Plaintiffs were not referring to themselves as consumers of their own website and thus should have brought their claims in arbitration.

        4.      <u>No Federal Statute or Policy Renders the Plaintiffs' Claims Non-Arbitrable.</u>

Once a court finds that the parties agreed to arbitrate their dispute, it must next consider whether any federal statute or policy renders the dispute non-arbitrable.[39] A claim is subject to

---

[35] App. 4 (emphasis added).
[36] *Id.* (emphasis added).
[37] *See* Tex. Civ. Prac. & Rem. Code § 171.002(a)(2).
[38] *Id.*
[39] *Will-Drill Res.*, 352 F.3d at 214.

<u>MOTION TO DISMISS AND COMPEL ARBITRATION</u>    **PAGE 7**

arbitration unless Congress intended to preclude the parties from waiving their judicial remedies.[40] Courts have regularly held that each of the claims alleged in this case—copyright infringement, violation of the Computer Fraud And Abuse Act, violation of the Digital Millennium Copyright Act, harmful access by computer, trespass to chattels, unfair competition, civil conspiracy, or breach of contract—are arbitrable and have compelled arbitration.[41]

### III. CONCLUSION

All of Plaintiffs' claims are within the scope of Plaintiffs' Website Use Agreement's arbitration provision. Therefore the Court should compel arbitration of Plaintiffs' claims and dismiss this case.

Dated: January 12, 2017

Respectfully Submitted,

**ANDREWS KURTH KENYON LLP**

*/s/ Benjamin J. Setnick*
Benjamin J. Setnick
Texas State Bar No. 24058820
Email: bensetnick@andrewskurth.com
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: 214-659-4400

**ATTORNEYS FOR DEFENDANTS**

---

[40] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 US 614, 628 (1985) ("Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."); *Gilmer*, 500 U.S. at 26; *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995).

[41] *See, e.g.*, *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 259 F. Supp. 2d 531, 540-41 (N.D. Tex. 2003) (Godbey, J.) (compelling arbitration of, *inter alia*, copyright infringement, misappropriation of trade secrets and intellectual property, conversion, fraud, violation of the Digital Millennium Copyright Act, and civil conspiracy claims); *Pegasus Int'l Inc. v. Champagne*, No. 6:11-1402, 2012 WL 5616095, at *1 (W.D. La. October 18, 2012) (Hill, Mag. J.) (recommending compelling arbitration of, *inter alia*, breach of contract, unfair trade practices, and Computer Fraud and Abuse Act claims).

Of counsel:

Joseph A. Patella
josephpatella@andrewskurth.com
450 Lexington Avenue
New York, NY 10017
Telephone: 212-850-2839

Erik C. Kane
Email: EKane@kenyon.com
1350 I Street, NW, Suite 1100
Washington, DC 20005
Telephone:  202-662-3039

Jessica Cohen-Nowak
Email: JCohenNowak@kenyon.com
One Broadway
New York, NY 10004
Telephone:  212-908-6419

## CERTIFICATE OF CONFERENCE

The undersigned certifies that he has conferred with Mark Bayer, Plaintiffs' counsel, who informed him that Plaintiffs oppose the relief requested herein.  Therefore this motion is presented to the Court for determination.

*/s/ Benjamin J. Setnick*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document has been served on all counsel of record via the Court's electronic filing system on January 12, 2017.

*/s/ Benjamin J. Setnick*