IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HERITAGE CAPITAL CORPORATION, et al. | § § § | |
| Plaintiffs, | § § | |
| VS. | § | Civil Action No. 3:16-CV-3404-D |
| CHRISTIE'S, INC., et al., | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

In this action asserting claims related to an alleged misappropriation of copyrighted material from www.HA.com ("HA.com"), defendants Christie's, Inc. and Collectrium, Inc. ("Collectrium") (collectively, "Christie's," unless otherwise indicated) move to dismiss and compel arbitration. Plaintiffs Heritage Capital Corporation, Heritage Auctioneers & Galleries, Inc., Heritage Numismatic Auctioneers, Inc., Heritage Auctions, Inc., Heritage Vintage Sports Auctions, Inc., Currency Auctions of America, Inc., and Heritage Collectibles, Inc. (collectively, "Heritage") oppose the motion and move for a preliminary injunction. Concluding that all of Heritage's claims are arbitrable under the HA.com Website Use Agreement, the court grants Christie's' motion to dismiss and compel arbitration, denies Heritage's motion for a preliminary injunction as moot, as dismisses this action with prejudice by judgment filed today.

I

Heritage operates HA.com, which hosts sales and auctions of collectibles. Images of the items and detailed descriptions accompany each sale or auction listing, each of which is copyrighted. Heritage maintains previously sold listings on the website, and, as of the filing of its complaint, HA.com hosted more than 8 million original images related to its listings. Those who visit and use HA.com for any reason assent to the Website Use Agreement, which prescribes rules and regulations for use and contains an arbitration clause that governs potential disputes.

Heritage alleges that Christie's downloaded some or all of HA.com's listings using an advanced computer code. Heritage traced this activity to Christie's, and it discovered that some of the listings downloaded from HA.com appeared on the Collectrium website.[1] Heritage estimates that approximately 2.7 million of the approximately 11 million listings on the Collectrium website came from HA.com.

Christie's does not deny that Collectrium posted Heritage listing images and descriptions on its website. Instead, Christie's contends that its use does not violate Heritage's copyright for various reasons, including fair use.

Heritage filed the instant lawsuit alleging seven federal and state claims: copyright infringement, under 17 U.S.C. §§ 106 and 501; violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*; violations of the Digital Millennium Copyright Act, 17 U.S.C.

---

[1]Collectrium is a subsidiary of Christie's, Inc.

§ 1201, *et seq.*; harmful access by computer, under Tex. Civ. Prac. & Rem. Code Ann. §§ 143.001 and 143.002; trespass; unfair competition; civil conspiracy; and breach of contract.[2]

Christie's moves to dismiss and compel arbitration based on the arbitration clause in the HA.com Website Use Agreement. Heritage opposes the motion and moves for a preliminary injunction enjoining Christie's, *inter alia*, from posting the allegedly infringing materials.[3]

II

The court first considers the motion of Christie's to dismiss and compel arbitration of all of Heritage's claims.

Section 2 of the Federal Arbitration Act ("FAA") provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3-4) (emphasis in original). When considering a motion to compel arbitration, the court engages in a two-step process. First,

---

[2]Not all plaintiffs join in all of the claims.

[3]Heritage also moves for leave to supplement its reply with a declaration, and Christie's moves to stay discovery. The court denies both motions as moot.

the court determines "whether the parties agreed to arbitrate the dispute." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam) (citation omitted). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id*. (citations omitted). Second, the court decides "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id*. (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). "If there is a valid agreement to arbitrate, and there are no legal constraints that foreclose arbitration, the court must order the parties to arbitrate their dispute." *Celaya v. Am. Pinnacle Mgmt. Servs., LLC*, 2013 WL 4603165, at *2 (N.D. Tex. Aug. 29, 2013) (Fitzwater, C.J.). Because of the strong presumption in favor of arbitration, the party opposing a motion to compel arbitration bears the burden of proving that the agreement is invalid or that the claims are outside the scope of the agreement. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

III

The court first considers whether there is a valid agreement between the parties to arbitrate.

The Website Use Agreement contains the following provision:

Choice of Law and Venue for Dispute Resolution

By Your use of the website you agree that any claim, dispute, or controversy in connection with Heritage and its affiliates shall:

a. if presented by a consumer, be exclusively heard by, and the parties consent to, exclusive in personam jurisdiction in the State District Courts of Dallas County, Texas. THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY. Any appeals shall be solely pursued in the appellate courts of the State of Texas; or

b. for any claimant other than a consumer, the claim shall be presented in confidential binding arbitration before a single arbitrator, that the parties may agree upon, selected from the JAMS list of Texas arbitrators. The case is not to be administered by JAMS; however, if the parties cannot agree on an arbitrator, then JAMS shall appoint the arbitrator and it shall be conducted under JAMS rules. The arbitrator's award may be enforced in any court of competent jurisdiction. Claims, disputes, or controversies in connection with Heritage shall be . . . construed in the broadest possible terms and include, but are not limited to, any matter or transaction relating to and/or arising out of any purchase, any offer to sell, any bid, usage of Website, or any amendment to this Agreement, any advances, any consigned properties, damage to any consigned, purchased or offered properties, any interpretation of this Agreement, any alleged verbal modification and/or any purported settlement whether asserted in contract, tort, under Federal or State statute or regulation or otherwise. Any party on any claim involving the purchase or sale of numismatic or related items may elect arbitration through binding PNG arbitration. Any claim must be brought within one (1) year of the alleged breach, default or misrepresentation or the claim is waived. This agreement and any claims shall be determined and construed under Texas law. The prevailing party (party that is awarded substantial and material relief on its claim or defense) may be awarded its reasonable attorneys' fees and costs.

Ds. App. 6 (bold font omitted).[4]

Heritage first contends that the parties have not agreed to arbitrate because, according to Heritage, Christie's maintains that it was not a user of the site that is subject to the Website Use Agreement.[5] Heritage thus asserts that Christie's cannot take advantage of the Website Use Agreement unless it fully embraces that it used the website to download Heritage's copyrighted materials.

The court need not decide whether Heritage is correct in this respect because, even if the court assumes that Christie's is not a user and therefore not a party to the Website Use Agreement, Christie's can still compel arbitration as if it were a party. In certain situations, a non-signatory to an arbitration agreement can compel a signatory-plaintiff to submit to arbitration under a theory of equitable estoppel. *See, e.g.*, *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 526-27 (5th Cir. 2000). Relevant here, "equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Id.* at 527 (emphasis omitted) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). In other words, "a signatory to [an arbitration agreement ] cannot . . .

---

[4]Unless otherwise noted, citations to filings refer to those associated with the motion to dismiss and compel arbitration of Christie's.

[5]Heritage does not contend that any of the plaintiffs is not a signatory to the Website Use Agreement.

- 6 -

'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Id.* at 528 (emphasis omitted).

The court concludes that each plaintiff relies on the Website Use Agreement in this action. Six of the plaintiffs' claims are explicitly derived, at least in part, from the Website Use Agreement: Count I (copyright infringement),[6] Count II (violation of the Computer Fraud and Abuse Act),[7] Count IV (harmful access by computer),[8] Count V (trespass),[9] and

---

[6]"Defendants intentionally and willfully entered Plaintiffs' website using fraudulent information and, with blatant disregard for and intent to breach the Website Use Agreement, have infringed Plaintiffs' copyrighted works in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§106, 501." Compl. ¶ 61.

[7]"Defendants knowingly and intentionally accessed Plaintiff's computers without authorization and in excess of authorization as defined by Plaintiff's Website Use Agreement. Defendants were notified each time an account was suspended and intentionally created a new account with false information rather than cease their unauthorized activity." *Id.* at ¶ 69.

[8]"Defendants knowingly and intentionally accessed Plaintiff's computers without effective consent as defined by Plaintiff's Website Use Agreement. Defendants were notified each time an account was suspended and intentionally created a new account with false information rather than cease their unauthorized activity." *Id.* at ¶ 87.

[9]"Defendants intentionally and willfully entered Plaintiff's website using fraudulent information and, with blatant disregard for and intent to breach the Website Use Agreement, have taken control of Plaintiffs' property, namely the content described above, and have wrongfully exercised that control in a manner inconsistent with Plaintiffs' ownership of the property." *Id.* at ¶ 96.

Count VIII (breach of contract).[10] Count VI—the unfair competition claim brought by all plaintiffs—implicitly relies on the Website Use Agreement. In support of Count VI, Heritage alleges:

> Defendants' intentional theft of HA.com content in order that Defendants may offer the content and information provided by HA.com on their competing websites is done intentionally to steal the value and benefits that Plaintiffs realize from its operation of HA.com and offering of original content, information and services to HA.com users.

Compl. ¶ 104. This incorporates the complaint's previous description of the alleged theft, which is asserted in support of Count II:

> Defendants exceeded their authorization on Plaintiff's website by using a spider software to scrape information and/or data from Plaintiff, and by publishing the stolen information and/or data on Collectrium's website. Defendants obtained content, information, and data of value from Plaintiff's computers and have realized value from their theft.

*Id.* at ¶ 72. Accordingly, because each plaintiff asserts at least one claim that relies on the Website Use Agreement, Christie's can compel arbitration as if there were a valid agreement between the parties.

IV

Having concluded that Christie's may invoke the Website Use Agreement's

---

[10]"Defendants have breached the Website Use Agreement. Among other things, Defendants have employed spiders to copy and collect data off of HA.com. Defendants have used false identification to create HA.com accounts after their original HA.com accounts were shut down for improper use. Defendants have reproduced copyrighted information stolen from HA.com on their own websites in violation of Plaintiff's rights." *Id.* at ¶ 117.

arbitration clause, the court must determine whether the agreement covers Heritage's claims. Heritage contends that (1) the arbitration clause does not apply to claims it brings against users,[11] and (2) even if the clause does apply to such claims, some of Heritage's claims are outside of the scope of arbitration.

A

The court applies federal law to decide whether the dispute in question falls within the scope of an arbitration agreement. *See, e.g., Graves v. BP Am., Inc.*, 568 F.3d 221, 222-23 (5th Cir. 2009) (per curiam). Under federal law, the court "resolve[s] doubts concerning the scope of coverage of an arbitration clause in a contract in favor of arbitration." *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990). Arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Id.* (citations and internal quotation marks omitted). "This strong presumption in favor of arbitration applies with even greater force when the parties include a broad arbitration clause." *Sharifi v. AAMCO Transmissions, Inc.*, 2007 WL 1944371, at *2 (N.D. Tex. June 28, 2007) (Fitzwater, J.) (internal quotation marks omitted). And the court's inquiry "is not guided by the legal labels attached to the plaintiffs' claims; rather, it is guided by the factual allegations underlying those claims." *Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000).

---

[11]Heritage appears to argue that this point affects whether an agreement to arbitrate exists between the parties. The court disagrees. Heritage maintains that an entire category of claims (those it brings against users) is excluded from the arbitration clause, which is an argument concerning its scope.

Because the arbitration provision at issue here applies to "any claim, dispute, or controversy," Ds. App. 6, it is a broad arbitration clause. *See In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) ("We have held that arbitration clauses containing the 'any dispute' language, such as the one presently before us, are of the broad type."). The agreement's use of "in connection with" language, Ds. App. 6, also indicates that the clause is broad. *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 239 F.3d 1061, 1067 (5th Cir. 1998) (holding that clause requiring arbitration of "[a]ny dispute, controversy or claim arising out of or in relation to or in connection with [an agreement]" was undoubtedly "broad" in scope). "The Fifth Circuit has held that when parties include a broad arbitration clause in their agreement, they 'intend the clause to reach all aspects of the relationship.'" *Sharifi*, 2007 WL 1944371, at *3 (quoting *Pennzoil*, 239 F.3d at 1067). Broad arbitration clauses "'are not limited to claims that literally arise under the contract, but rather embrace all disputes having a significant relationship to the contract regardless of the label attached to the dispute.'" *Id.* (quoting *Pennzoil*, 139 F.3d at 1067).

B

Heritage first maintains that the Website Use Agreement, which "governs Your use of this Website," Ds. App. 5, implicitly excludes the claims it brings. According to Heritage, "the purpose of the Website Use Agreement is regulation of the conduct of website users, not Heritage." Ps. Br. 5. Heritage therefore maintains that it cannot be considered "any claimant other than a consumer," who would trigger the arbitration clause. Ds. App. 6. And it posits that a holding that the arbitration clause encompasses Heritage's claims would subject any

claim that it brings against a consumer to the arbitration provision, while claims brought by consumers would be resolved in state court, a result that Heritage contends makes no sense. Heritage therefore concludes that the arbitration clause "covers claims that a website user might have 'with Heritage,'" but excludes possible claims by Heritage against users. Ps. Br. 10.

The court concludes that the arbitration clause encompasses claims brought by Heritage. The clause states that "any claim, dispute, or controversy in connection with Heritage and its affiliates shall . . . for any claimant other than a consumer . . . be presented in confidential binding arbitration[.]" Ds. App. 6. Because claims brought by Heritage are in connection with Heritage and its affiliates, and Heritage is a claimant other than a consumer of HA.com, the arbitration clause explicitly encompasses these claims.

Moreover, the agreement instructs the court to construe the clause "in the broadest possible terms[.]" *Id.* As noted above, the court construes broad arbitration clauses to reach all aspects of the relationship and all claims connected to it, necessarily including claims where Heritage is a plaintiff. *See Sharifi*, 2007 WL 1944371, at *3. Likewise, the court will not, as Heritage suggests, infer an exception to a broad arbitration clause. Any exception must be explicitly detailed in the agreement. *See Commc'n Workers of Am., AFL-CIO v. Tyco Power Sys., Inc.*, 2003 WL 22271904, at *3 (N.D. Tex. Sept. 2, 2003) (Fitzwater, J.) (noting that provision that specifically provided that certain claims shall not be subject to arbitration created exception to otherwise broad arbitration clause). The text contains no such exception here, and the court therefore concludes that the arbitration clause

unambiguously covers claims brought by Heritage against users.[12]

C

Heritage also contends that two of its claims—Count I for copyright infringement and Count VI for unfair competition—are not arbitrable because their subject matters are outside the scope of the agreement.[13] As noted *supra* at § IV(A), the court must compel arbitration as to a given claim if the clause is susceptible to any interpretation that covers the claim. *See Neal*, 918 F.2d at 37. And this determination is made by looking to the factual allegations underlying a claim. *See Harvey*, 199 F.3d at 795. Count I explicitly invokes the Website Use Agreement. *See supra* note 6. And Count VI relies on factual allegations connected to the use of HA.com. *See supra* § III. Accordingly, the court concludes that reasonable interpretations of the arbitration agreement cover Counts I and VI, as well as Heritage's remaining claims, and all claims therefore fall within the scope of the arbitration agreement.

V

Heritage maintains that the court should stay the case, rather than dismiss it, as

---

[12]The court is similarly unpersuaded by Heritage's argument that it makes no sense for Heritage to be forced to arbitrate claims it brings against consumers but not claims consumers bring against it. The court cannot rewrite an unambiguous agreement.

[13]Heritage contends that its "only claims against Defendants regarding Defendants' use of HA.com are those claims concerning the robotic scraping of content." Ps. Br. 8-9. Therefore, "Plaintiffs' remaining claims, such as for unfair competition and infringement of Plaintiffs' copyrights, including republication of HA.com content and use of it to lure business away from Heritage, are not arbitrable." *Id.* at 9. Because Heritage only specifically identifies its unfair competition and copyright infringement claims as not arbitrable, Heritage has failed to carry its burden as to all other claims.

Christie's requests.[14]

When the court determines that all claims in a lawsuit are arbitrable, the court must stay the suit pending arbitration. *See* 9 U.S.C. § 3. "This rule, however, was not intended to limit dismissal of a case in the proper circumstances. The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original). When, as here, "[t]he only possible role the Court could have would be to review the arbitration award once the proceedings are concluded[,]" the court should dismiss rather than stay. *SGC Health Grp., Inc. v. Eclinicalworks, LLC*, 2016 WL 2595109, at *2 (N.D. Tex. May 4, 2016) (Lynn, C.J.). Because the court has concluded that all of Heritage's claims are arbitrable, the court grants the motion to dismiss.

\* \* \*

For the reasons explained, the court grants the motion to dismiss and compel arbitration of Christie's and denies as moot Heritage's motion for a preliminary injunction, Heritage's motion for leave to supplement its reply with a declaration, and the motion of Christie's to stay discovery. The court dismisses this action with prejudice by judgment filed

---

[14]Heritage does not contend that the court should rule on Heritage's preliminary injunction motion even though it has granted the motion to dismiss and compel arbitration of Christie's. *See* Ps. Br. 3-4 (noting only that the court has the power to defer a decision on the motion to compel arbitration until after deciding the preliminary injunction motion). Accordingly, the court denies Heritage's motion for a preliminary injunction as moot.

today.

**SO ORDERED**.

May 1, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE